# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RE/MAX INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> EQUITY MAX REALTY, INC.; and RICHARD F. BONORA, <br><br> Defendants. | CASE NO. 06CV1345 WQH(ABJ) <br><br> ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS <br><br> (Doc. # 14) |

HAYES, Judge:

The matter before the court is Defendants' Motion for Judgment on the Pleadings. (Doc. #14.)

**ALLEGATIONS OF THE COMPLAINT**

Plaintiff RE/MAX International, Inc. is a Colorado corporation which provides real estate brokerage services throughout the United States through a network of franchisees and independent contractors. (Compl. at 1, 2.) Plaintiff owns three service marks in "RE/MAX," and two in "REMAX." (Compl. at 12-24.) Two of the RE/MAX service marks have become incontestable under 15 U.S.C. § 1065. Plaintiff also holds a California state trademark in "RE/MAX." (Compl. at 2.) All Plaintiff's marks are associated with real estate brokerage services and related franchise activities. (Compl. at 12-25.)

1    Defendant Equity Max Reality, Inc. ("Equity Max"), a California corporation, formerly did
2 business under the name EMAX Realty International. (Compl. at 3.) In August of 2004, Plaintiff filed
3 a complaint in this Court against Equity Max and its principal, Richard Bonora ("Defendants"),
4 alleging that their use of the name EMAX constituted trademark infringement and dilution, and unfair
5 competition. (Compl. at 3.) The matter was resolved by an Order and Consent Judgment ("Consent
6 Judgment"), issued on April 10, 2006. (Compl. at 3.) In the Consent Judgment, Defendants admitted
7 the validity and enforceability of the RE/MAX marks.[1] (Compl. at 4.) The Consent Judgment
8 enjoined Defendants from using the EMAX mark in connection with real estate goods or services.
9 (Compl. at 3-4.)

10    Defendants, now using the mark "Equity Max," compete directly with Plaintiff in providing
11 real estate brokerage services in California. (Compl. at 4.) Defendants adopted the name "Equity
12 Max" with actual knowledge of RE/MAX's similar name and service marks. (Compl. at 4-5.)
13 Defendants are also still using realty signs with the EMAX mark in violation of the Consent
14 Judgment's injunction. (Compl. at 4.)

15                    **PROCEDURAL HISTORY**

16    On June 29, 2006, Plaintiff filed the Complaint in this matter, alleging trademark infringement
17 under 15 U.S.C. § 1114, Cal. Bus. & Prof. Code § 14200, *et seq.* and the common law, and unfair
18 competition under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200 and the common law. (Doc.
19 # 1.) Plaintiff seeks monetary damages, attorney's fees, and an injunction to prevent Defendants from
20 using any mark confusingly similar to Plaintiff's marks. On August 14, 2006, Defendants answered,
21 asserting affirmative defenses including failure to state a claim upon which relief may be granted, no
22 likelihood of confusion, and fair use. (Doc. # 8.) On October 24, 2006, Defendants moved for
23 judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. # 14.)
24 Defendants' motion raised for the first time a question of collateral estoppel. Defendants contend that
25 because the United States District Court for the Northern District of Illinois ("Illinois court") issued
26 a declaratory judgment on September 26, 2006, holding the term "max" to be "a generic or common

27

28    [1]Paragraph 6 of the Consent Judgment reads, "Defendants admit that the RE/MAX Trademark as set forth above is valid and enforceable." (Pl.'s Opp'n, Ex. A at 3.)

descriptive word" and denying Plaintiff the exclusive right to use it, Plaintiff should be estopped from asserting infringement in this case. (Def.'s Mem. Supp. J. Plead. at 2-3.) In the alternative, Defendants argue that there is no trademark infringement as a matter of law because the "Equity Max" and "RE/MAX" marks are so dissimilar that no reasonable consumer could be confused about the source of their services. (Def.'s Mem. Supp. J. Plead. at 1.)

### STANDARD OF REVIEW

"Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true and construed in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 360 (9th Cir. 2005). In addition to considering the pleadings, a court may take judicial notice of matters of public record without converting the motion to one for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (applying Rule 12(b)(6)). If a court grants judgment on the pleadings, it is a decision on the merits. *See General Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventists Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

### DISCUSSION

Defendants argue that judgment on the pleadings should be entered for two independent reasons. First, they invoke collateral estoppel, arguing that the Illinois court's declaratory judgment is determinative of this case. (Def.'s Mem. Supp. J. Plead. at 1.) Second, they argue that there is no likelihood of customer confusion, and, thus, no trademark infringement. *Id.*

**A. Collateral Estoppel**[2]

---

[2] Collateral estoppel, or issue preclusion, is an affirmative defense that must be pleaded. *See* Fed. R. Civ. Pro. 8(c); *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971). However, "[a] defendant may thus raise an affirmative defense for the first time in a motion for judgment on the pleadings, but only if the delay does not prejudice the plaintiff." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997)). In *Owens*, the defendant raised a defense of res judicata for the first time in its motion for judgment on the pleadings. The court concluded that the plaintiff was not prejudiced, even though the defendant knew of the prior proceedings at the time of pleading and including it at that stage might have been dispositive. *Id.* In this case, the declaratory judgment Defendants seek to use to collaterally estop the Plaintiff was issued after Defendants answered the complaint, so Defendants did not have the opportunity to raise it as an affirmative defense initially. Moreover, Plaintiff had the opportunity to argue the issue in its response to Defendants' motion for judgment on the pleadings. Thus, Plaintiff is not prejudiced by the delay,

Nonmutual collateral estoppel is the use of an issue a party litigated and lost in a prior action by a nonparty to that action to prevent relitigation of the same issue in a subsequent suit. *See Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 714 n.3 (9th Cir. 2005) (citing *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 320-30 (1971)). Generally speaking, it is used defensively when a defendant raises it, as Defendants have in this case, and is used offensively when a plaintiff raises it.[3] *See id.; Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979). A federal court decision can be used for defensive collateral estoppel when (1) an identical issue was necessarily decided as part of the prior proceeding, (2) the prior proceeding concluded with a final judgment on the merits, and (3) the party to be collaterally estopped is the same as or in privity with the party in the prior proceeding. *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005).

There is no question that Plaintiff here was a party to the Illinois case. *Amerimax Real Estate Partners, Inc. v. RE/MAX Int'l, Inc.*, 2006 WL 2794934 (N.D. Ill. 2006). Therefore, whether collateral estoppel applies in this case turns on whether the issue is identical, and whether the Illinois court's decision is a final judgment on the merits. *Kourtis*, 419 F.3d at 994.

The Ninth Circuit has identified four factors to aid in determining whether issues are identical. These are: (1) whether there is substantial overlap in the evidence or argument presented in the first proceeding and that to be advanced in the second proceeding, (2) whether the same rule of law applies, (3) whether pretrial preparation and discovery for the first matter would have covered the information to be presented in the second matter, and (4) the relatedness of the claims. *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999). The party asserting collateral estoppel bears the burden of proving that the issues are identical. *Id.*

Examination of the second factor--whether the same rule of law applies--demonstrates that

---

and consideration of the issue is appropriate at this time.

[3] Both Defendants in their motion and Plaintiff in its opposition incorrectly refer to the issue preclusion question presented in this case as "nonmutual *offensive* collateral estoppel." (Def. Mem. Supp. J. Pleadings at 5-6; Pl. Opp'n at 4) (emphasis added).) The estoppel would be defensive in this case because it is being asserted by Defendants to prevent Plaintiff from pressing a claim against them that they assert Plaintiff has already litigated and lost against another party. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979).

1  collateral estoppel does not apply in this case. In evaluating a trademark infringement claim, the Ninth
2  Circuit uses an eight-factor test to determine whether consumers are likely to be confused. The factors
3  are: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4)
4  evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are
5  likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the
6  likelihood of expansion into other markets. *See KP Permanent Make-Up, Inc. v. Lasting Impression*
7  *I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49
8  (9th Cir. 1979)). The Illinois court, which is located in the Seventh Circuit, did not discuss any of
9  these factors. Rather, the Illinois court merely determined that the term "max" is "a generic of
10 common descriptive word commonly used as a prefix or suffix for business names" and that RE/MAX
11 could not assert exclusive rights to the term or establish trademark infringement based solely on the
12 use of the term. *Amerimax*, 2006 WL 2794934 at 7. These are not the issues raised by Plaintiff's
13 trademark infringement claim in this Court.

14 Plaintiff claims trademark infringement based on its full marks of "RE/MAX" and "REMAX,"
15 not based on a piece of those marks. (Compl. at 4-5; Pl. Opp'n at 5.) In the Ninth Circuit, a trademark
16 may contain elements that are common words and still be protectable. *See Surgicenters of Am., Inc.*
17 *v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1017 (9th Cir. 1979) ("[W]ords which could not
18 individually become a trademark may become one when taken together."). A trade or service mark
19 must be examined as a whole, not dissected and examined in pieces. *See Rodeo Collection, Ltd. v.*
20 *West Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987) ("Composite marks should be examined in their
21 entirety, not piece by piece."); *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir.
22 1979) (abrogated on other grounds) (when comparing "Slickcraft" and "Sleekcraft", the court cannot
23 "disregard the common suffix 'craft' and compare Slick and Sleek alone. Although these are the
24 salient parts of the two marks, we must consider the entire mark.").

25 Moreover, in the Consent Judgment, Defendants admitted that Plaintiff's trademarks are valid
26 and enforceable. This precludes Defendants from attacking the plaintiff's trademark as merely generic
27 and therefore unenforceable. *Surfvivor Media, Inc. v. Survivor Prod.*, 406 F.3d 625, 632 (9th Cir.
28 2005) ("generic marks . . . describe the product in its entirety, and [] are not entitled to trademark

protection"). Further, in the Consent Judgment, Plaintiff specifically reserved the right to contest Defendants' future use of the suffix "max," a situation which was not before the Illinois court.[4]

Plaintiff also alleges that two of its trademarks have become incontestible. (Compl. at 2.) Incontestible status prevents the mark from being attacked as merely descriptive and lacking in secondary meaning. *See KP Permanent Make-Up,* 408 F.3d at 606 ("[A] defendant in a trademark infringement action cannot assert that an incontestable mark is invalid because it is descriptive and lacks secondary meaning."); *cf.* 15 U.S.C. § 1115 (2007) (stating that a mark's registration as incontestible "shall be prima facie evidence of the validity of the registered mark."). Thus, the finding by the Illinois court that "max" is a "generic or common descriptive word" has no bearing on the issue of trademark infringement before this Court at this time.[5] For these reasons, the Court concludes that Defendants have not met their burden of showing that the issues are identical.

Additionally, even if the issues were identical, the Illinois court's declaratory judgment does not possess the degree of finality required to be preclusive. "A final judgment for purposes of collateral estoppel can be any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Luben Indus., Inc. v. U.S.*, 707 F.2d 1037, 1040 (9th Cir. 1983) (internal quotations omitted). The declaratory judgment issued by the Illinois court did not adjudicate all of the claims brought by all of the parties, and did not contain the language required by Federal Rule of Civil Procedure 54(b) to make it immediately appealable. On October 11, 2006, Re/Max filed a motion to reconsider the declaratory judgment, or in the alternative, certify the issue for interlocutory appeal. That motion remains pending before the Illinois district court, as discovery proceeds on the remaining claims (including Re/Max's trademark infringement counterclaim). Because the declaratory judgment could not be appealed as of the date of this Order, and because it is subject to reconsideration, it does not constitute a "final judgment" for the purposes

---

[4] The Consent Judgment states, in relevant part, "RE/MAX expressly reserves the right to object to and/or pursue legal action regarding any mark, name or design adopted and used by Defendants, which RE/MAX believes, in its sole discretion, to constitute infringement and/or dilution of the RE/MAX Trademark, including, but not limited to any mark, name or design containing the prefix 'RE' and/or the suffix 'MAX.'" (Pl.'s Opp'n, Ex. A at 4.)

[5] Defendants did not argue in their motion that Plaintiff should be estopped from asserting that "max" is not descriptive for purposes of defeating a fair use defense. Thus, the Court does not reach whether the Illinois decision could have preclusive effect for that purpose.

1 of collateral estoppel. *See St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1425 (9th Cir. 1995) ("We conclude that F.H. and K.W. are not collaterally estopped. The partial summary judgment was not a final judgment. As a partial summary judgment, it could not have been appealed by F.H. and K.W. when it was entered. It was subject to reconsideration on proper motion. We cannot say that the ruling was sufficiently firm to be accorded conclusive effect.") (quotation omitted).

Finally, the Supreme Court stated in *Blonder-Tongue* that "determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate" the issue is an important safeguard against unfair use of nonmutual collateral estoppel. *Blonder-Tongue*, 402 U.S. at 329. Plaintiff alleges that the Illinois court's judgment was made *sua sponte,* not allowing a full and fair opportunity to litigate the matter, and therefore application of nonmutual collateral estoppel would be unfair in this situation. The Illinois court's opinion does not indicate whether Plaintiff had an opportunity to contest the issues. Accepting Plaintiff's assertions as true for purposes of this motion, the Court finds the application of nonmutual collateral estoppel would be inappropriate at this time, even if all the other factors were met.

**B. Likelihood of Confusion**

The remaining issue is whether, based upon the pleadings, there is no trademark infringement as a matter of law. "The test of trademark infringement under state, federal, and common law is whether there will be a likelihood of confusion." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005). There is likelihood of confusion when consumers who see a mark "would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075-76 (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987)). As already mentioned, the Ninth Circuit evaluates the following eight factors to determine whether consumers are likely to be confused: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets. *See KP Permanent Make-Up*, 408 F.3d at 608 (citing *AMF,* 599 at 348-49). The factors are

not all of equal importance, and some may not be applicable in a given case. *See id.* (citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001)). The factors are not to be rigidly weighed, or treated as a score card; rather "courts may examine some or all of the factors, depending on their relevance and importance." *Au-Tomotive Gold*, 457 F.3d at 1076.

A plaintiff can prevail having made a strong showing on only some of the factors. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005). In their motion for judgment on the pleadings, Defendants base their trademark analysis solely on what they assert is a lack of similarity between the marks, and discuss none of the other factors. (Def.'s Mem. Supp. J. Plead. at 8). Defendants cite no case to support the proposition that the Court can find that there is no trademark infringement as a matter of law based on this one factor alone. In the case they cite for the importance of the similarity of the marks factor, *Go-to.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199 (9th Cir. 2000), the court based its holding that there was a likelihood of confusion primarily on three of the factors and discussed all eight. *See id.* at 1207. In *Lindy Pen Co., Inc. v. Bic Pen Corp.,* 725 F.2d 1240 (9th Cir. 1984), the Ninth Circuit stated that it is "inappropriate" to equate the similarity of the marks with ultimate legal question of likelihood of confusion. *See id.* at 1245; *cf. Academy of Motion Picture Arts and Sciences v. Creative House,* 944 F.2d 1446, 1455 (9th Cir. 1991) ("By linking the sub-issue of mark strength with the overriding issue of likelihood of confusion, the district court improperly collapsed a single threshold factor into the ultimate question to be determined.") (citing *J.B. Williams Co., Inc. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 192 (9th Cir. 1975)).

The Ninth Circuit has "developed three axioms that apply to the 'similarity' analysis: 1) Marks should be considered in their entirety and as they appear in the marketplace; 2) Similarity is best adjudged by appearance, sound, and meaning; and, 3) Similarities weigh more heavily than differences." *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1145 (9th Cir. 2002). Regarding appearance and sound, the feature Plaintiff's mark shares with Defendants' mark is the term "max." Defendants contend that this similarity is insufficient as a matter of law. (Def.'s Mem. Supp. J. Plead. at 8.) Plaintiff contends that the marks are confusingly similar. (Compl. at 4-5.) Ninth Circuit decisions have found marks to be "substantially similar" under the third factor of the likelihood of confusion analysis when the parties have similar products and their marks shared only a common

1 word. *See Earthquake Sound Corp. v. Bumper Indus., Inc.*, 188 F.3d 513, 517 (9th Cir. 1999) (finding
2 car stereo speaker marks which shared only the suffix "quake" to be similar); *Rodeo Collection*, 812
3 F.2d at 1219 (holding that shopping center names which shared the word "collection" were
4 substantially similar). Meanwhile, the cases cited by Defendants involving the specific term "max"
5 are factually distinguishable. In *OfficeMax, Inc. v. MedMax, Inc.*, the court emphasized that the fact
6 that the products were very different (office supplies as opposed to medical supplies) made customer
7 confusion unlikely. *See OfficeMax, Inc. v. MedMax, Inc.*, 1997 WL 1189354 at *3 (E.D. Mich. 1997).
8 In *American Cyanamid Co. v. S.C. Johnson & Son, Inc.*, the products were the same, however, the
9 alleged infringer's use of the term "max" was accompanied by its own strong trademark in the brand
10 "Raid," and it was this fact that saved the use from creating confusion. *See Am. Cyanamid Co. v. S.C.
11 Johnson & Son, Inc.*, 729 F. Supp. 1018, 1022 (D.N.J. 1989). Here, the parties' services are alleged
12 to be the same (Compl. at 4), and Defendants have not argued that their own trademark is particularly
13 strong, nor do the pleadings support that conclusion. Construing the allegations in the light most
14 favorable to Plaintiff, the Court cannot grant judgment as a matter of law based solely on the similarity
15 of the marks factor.

16 The pleadings in this case present no allegations relating to four of the remaining seven factors.
17 There is limited information as to three: Plaintiff's Complaint asserts that Defendants offer the same
18 services (i.e. "proximity of the goods") in the same market (i.e. "marketing channels used"), and that
19 the Defendants had actual knowledge of the Plaintiff's marks when they adopted their own (i.e.
20 "intent"). (Compl. at 4-5.)

21 The Ninth Circuit has stated that trademark issues are often "inherently factual." *Clicks
22 Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001). Particularly with respect to
23 the infringement element of likelihood of confusion, "a full record is usually required to fully assess
24 the facts." *KP Permanent Make-Up v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005)
25 (citing *Clicks Billiards*, 251 F.3d at 1265); *see also Au-Tomotive Gold, Inc. v. Volkswagen of Am.,
26 Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006). Construing the allegations of the Complaint in the light
27 most favorable to the Plaintiff, and in light of the inherently factual nature of trademark infringement,
28 the Court cannot conclude at this stage that, as a matter of law, there is no trademark infringement in

this case.

### C. Requests for Judicial Notice

A court may take judicial notice of matters of public record without converting the motion to one for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (applying Rule 12(b)(6)). For the purposes of deciding the motion for judgment on the pleadings, the Court takes judicial notice of the following matters of public record: the Consent Judgment entered in *RE/MAX Int'l, Inc. v. Equity Max Mortgage, Inc.*, No. 04-cv-1744 (S.D. Cal., filed Aug. 27, 2004); and the docket in *Amerimax Real Estate Partners, Inc. v. RE/MAX Int'l, Inc*., No. 1:06-cv-6574 (N.D. Ill., filed Sept. 16, 2006). The Court sustains the objections to the following materials submitted in support of or in opposition to the motion for judgment on the pleadings on the grounds that they are irrelevant: the California corporate filing information for Equity Max Mortgage, Inc.; the Florida corporate filing information for EquityMax Realty, Inc.; and the interrogatory responses submitted by plaintiff in *Amerimax Real Estate Partners, Inc. v. RE/MAX Int'l, Inc*., No. 1:06-cv-6574 (N.D. Ill., filed Sept. 16, 2006).

## CONCLUSION

Defendants have not met their burden to show that collateral estoppel applies, or that they otherwise are entitled to judgment as a matter of law. Accordingly, the Defendant's motion for judgment on the pleadings (Doc. # 14) is **DENIED**.

DATED: April 3, 2007

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge